ESTATE OF LIBBY: CENTRAL WISCONSIN TRUST COMPANY, Trustee, Appellant, vs. LIBBY and another, Respondents.

*May 15—June 21, 1926.*

*Guaranty: Construction of contract: Direct or collateral undertaking: Designation by parties: Extension of time: Effect on non-consenting guarantor.*

1. An instrument wherein certain stockholders of a corporation "guarantee payment" and "agree to hold harmless and indemnify" the corporation bondholders is a guaranty and not an original promise, notwithstanding the statement therein that "this shall be an original undertaking." p. 597.
2. The nature of an instrument should determine its character rather than the name which the parties apply to it. p. 597.
3. Where, upon the death of one of the guarantors, the obligee in the undertaking secured a contingent lien judgment against the lands of the deceased guarantor, and subsequently the co-guarantors secured a time extension, agreeing to pay additional interest, without the consent of the owners of the land, the lien will be released. p. 597.

APPEAL from a judgment of the county court of Dane county: A. G. ZIMMERMAN, Judge. *Affirmed.*

This is an appeal from a judgment adjudging that a judgment theretofore rendered in favor of the *Central Wisconsin Trust Company* as trustee, imposing a lien upon certain lands formerly the property of John L. Libby, deceased, and by final judgment set over to the respondents, be released, and directing said trust company to satisfy the same.

For the appellant there was a brief by *Bagley, Spohn & Ross* of Madison, and oral argument by *Frank A. Ross.*

For the respondents there was a brief by *Buell & Lucas,* attorneys, and *Rufus B. Smith,* of counsel, all of Madison, and oral argument by *Charles E. Buell.*

CROWNHART, J. The facts are not in dispute. The respondents were heirs of one John L. Libby, who in his lifetime was a stockholder in the Northern Minnesota Dairy Farm Land Company. Said company desired to issue bonds against its property, which consisted of a large amount of real estate in Minnesota, and as an inducement to the appellant, the *Central Wisconsin Trust Company,* to act as trustee and procure the sale of said bonds, John L. Libby with other stockholders executed an undertaking to see that said bonds were paid when due. Before the bonds became due John L. Libby died and his estate was administered. The appellant, *Central Wisconsin Trust Company,* filed a contingent claim against said estate on account of said undertaking, and thereafter a stipulation was entered into whereby a contingent judgment was entered in said court creating a lien against certain lands of the deceased in favor of the appellant, in place of said original undertaking, the balance of the estate being released from the liability thereof.

Thereafter the bonds were about to become due and the other stockholders liable on said undertaking secured an extension of time for a period of five years for payment

of said bonds, agreeing to pay an additional one per cent. per annum to secure such extension.

The respondents, *Benjamin Libby* and *Charles I. Libby,* are the owners of said real estate subject to said judgment lien, and they did not consent to such extension of time for the payment of the bonds or the additional one per cent. per annum to secure the extension of time for payment of the same. They now claim that they were sureties or guarantors for the payment of said bonds, and that the action of the other stockholders and the appellant, *Central Wisconsin Trust Company,* in extending the time for the payment of the same, and the increased charge of one per cent. per annum, have the effect in law of releasing the respondents and their lands from such judgment lien. The county court so held, and from the judgment so entered the *Central Wisconsin Trust Company* appeals.

The one question before this court is the interpretation of the original undertaking and the subsequent stipulation and judgment lien against said land, to determine whether or not the respondents and their predecessor in title were guarantors or sureties, or whether their liability was that of original promisors to pay.

The trial court in its opinion analyzes the original undertaking and the stipulation and judgment creating a lien on the land, and comes to the conclusion that the respondents and their predecessors in title were guarantors or sureties. The trial court, in a careful analysis of the facts, said:

"(1) In the third paragraph of the agreement, Libby *et al.* 'hereby jointly and severally guarantee to said Trust Company, etc.,' 'the just and full payment of said bonds, etc.'

"(2) In the fourth paragraph they 'agree to hold harmless and indemnify each and every of the holders of the bonds secured by said trust deed from all charges, etc.,' in the enforcement of the trust, etc.

"(3) In the first paragraph it is made clear that the party that procures the loan and borrows the money, for its own purposes, as the principal involved, is the Land Company only,—which would seem to indicate that the liability of any other signer would be that of a guarantor or surety merely.

"(4) Then later, the Trust Company, as trustee, filed its claim in the Libby estate, saying therein, 'The payment of these bonds, both principal and interest, were guaranteed by the said John L. Libby under an agreement in writing,' quoting the agreement in full, and this was allowed as a contingent claim, such filing and allowance clearly indicating only a contingent or security liability, and thus preserving the obligation and force of the original agreement.

"(5) In the stipulation upon which the lien judgment was entered, it is recited, in the second paragraph, that 'the payment of said bonds, etc.,' 'was guaranteed by a contract in writing,' referring to the agreement and naming the signers.

"(6) In paragraph 4 of the stipulation it is recited that the trustee 'filed a contingent claim' founded on Libby's liability 'incurred and undertook by signing the said contract of guaranty.'

"(7) In the stipulation, agreeing-paragraph numbered 1, it is expressly agreed that the claim 'may and shall be allowed as a contingent claim.'

"(8) In paragraph numbered 3 it is agreed that in case the heirs 'shall hereafter be required to pay said claim' they 'shall have all the rights as guarantors against all or any of the other guarantors,' as the deceased would have had 'by reason of said guarantee.'

"(9) In paragraph numbered 4 of the stipulation it is agreed 'that each of the other guarantors' 'consent' to the arrangement, and agree to preserve 'the joint and several liability on said contract of guaranty for the payment of said bonds.'

"(10) And in the last paragraph of the stipulation the remaining signers are referred to as 'surviving guarantors.'

"(11) In the final judgment on the stipulation it is found that 'a contingent claim' was filed and allowed 'upon the liability of said deceased as guarantor of the payment

of said bonds,' and the realty assigned 'subject to the lien of said contingent claim' and 'preserving the petitioners' guaranty rights 'against the other guarantors of said bonds.'

"(12) Later, in the consent to extension and increase of interest rate signed by the other signers, they refer to the bonds that 'were guaranteed by the undersigned.'

"(13) And in the resolution of the Land Company requesting consent to extension, the charge of the bonds on the corporate property secured by trust deed is retained, 'except such property as shall have been heretofore released, and except such guarantors as have deceased, the same as though the date of payment had not been extended.'

"On the other hand, the indications argued as pointing to an original direct obligation are:

"(1) In paragraph 5 of the agreement appears this language: 'It is hereby expressly understood and agreed that this obligation is and shall be an original undertaking on the part of the undersigned to induce the sale of said bonds *and to secure the payment thereof, etc.,*'—not to directly pay them.

"(2) And in paragraph 4 of the agreement it is said: 'And the undersigned jointly and severally waive demand and notice of the nonpayment of said bonds and interest and taxes, and *agree to hold harmless and indemnify* each and every of the holders of the bonds, etc.,'—not to directly pay them.

"(3) It is agreed that in the last two foregoing quotations the parties have themselves said the agreement was an original undertaking, and that only in such an agreement is the waiver of notice pertinent in this state.

"However, it would seem that the constant and frequent subsequent references, statement and admissions, as to the agreement, as a guaranty contract merely, would supersede any single apparent prior contradictory self-interpretation, and would on this record estop the trustee from now claiming other than a mere guaranty contract obligation on the part of the petitioners."

The appellant relies largely upon the case of *Drovers' Deposit Nat. Bank v. Tichenor,* 156 Wis. 251, 145 N. W. 777, but in that case there was a direct promise to pay,

whereas in this case payment is guaranteed in the original agreement, and the same idea is carried out throughout all subsequent proceedings and documents with reference thereto. To be sure, in the original undertaking it is said:

"It is hereby expressly understood and agreed that this obligation is and shall be an original undertaking on the part of the undersigned to induce the sale of said bonds and to secure the payment thereof. . . ."

But, as was said in the *Drovers' Case,* "The nature of the instrument should determine its character, rather than the name which the parties applied to it."

As we consider the nature of the instruments here, it seems reasonably certain that the parties entered into an undertaking to guarantee the payment of the bond rather than to assume the principal obligation.

There seems to be no difference of opinion here as to the liability of the guarantors. As is said in 12 Ruling Case Law, 1081:

"The liability of a guarantor is strictly confined within the bounds of his contract. The principal debtor and the creditor can do nothing to increase his liability. . . . Thus an alteration in the terms of the principal obligation, or an extension of time of performance, may have the effect of releasing the guarantor from responsibility on the guaranty. . . . The guarantor has a right to prescribe the exact terms upon which he will enter into the obligation and to insist upon his discharge if those terms are not observed."

There is some contention on the part of the appellant that if it be held that the original contract was one of guaranty, still the stipulated judgment in the county court was one of direct obligation. We think the trial court correctly interpreted the stipulation and judgment based thereon.

*By the Court.*—The judgment of the county court is affirmed.